**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**ALICE BRESLOFF-HERNANDEZ,**

                          **Plaintiff,**          **05 Civ. 0384 (JGK)**

            **- against -**                    OPINION AND ORDER

**MARTIN F. HORN, as Commissioner of the**
**NYC Department of Correction,**

                          **Defendant.**
_____

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Alice Bresloff-Hernandez, brings this action
against Martin F. Horn, in his capacity as Commissioner of the
New York City Department of Correction ("DOC").  The plaintiff
alleges that the defendant discriminated against her in
violation of the Americans with Disabilities Act ("ADA"), 42
U.S.C. § 12101 et seq.; New York State Human Rights Law
("NYHRL"), N.Y. Exec. Law § 296; and New York City Human Rights
Law ("NYCHRL"), N.Y. City Admin. Code § 8-107(1)(b).  The
plaintiff, a retired Correction Officer, alleges that her
medical separation from employment in July 2003 was
discriminatory and that the DOC failed to accommodate her
disability when she was reinstated in March 2004.  The plaintiff
also alleges that the defendant violated the terms of a court-
endorsed stipulation of settlement dated March 27, 1991, in
Aversa v. City of New York, 90 Civ. 0138 (PKL).

The DOC now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that the plaintiff cannot establish a prima facie case of disability discrimination because at the time she was medically separated from her position she could not perform the essential functions of the job, and further, that the defendant had a legitimate non-discriminatory reason for medically separating the plaintiff. The defendant also argues that the plaintiff's failure to accommodate claim must be dismissed because the plaintiff did not exhaust her administrative remedies by presenting this claim to the Equal Employment Opportunity Commission ("EEOC"). Further, the defendant argues that the plaintiff cannot establish a prima facie case of failure to accommodate because (1) she was not disabled at the time she made the request; (2) she did not provide notice that she was seeking an accommodation for an alleged disability; and (3) she requested an accommodation that was neither reasonable nor related to her alleged disability.  Finally, the defendant argues that the plaintiff cannot establish that the defendant violated the stipulation of settlement in <u>Aversa</u>.


**I.**

The following facts, unless otherwise noted, are undisputed.  The plaintiff was employed by the DOC from 1986

2

until January 2007 as a Correction Officer.  (Transcript of Nov.
16, 2006 Deposition of Alice Bresloff-Hernandez ("Dep. Tr."), at
14.)  On or about January 25, 2000 the plaintiff was injured in
an on-duty bus accident.  (Def.'s Rule 56.1 St. ¶ 2; Pl.'s Resp.
Rule 56.1 St. ¶ 1.)[1]  Due to her injuries, the plaintiff's duty
status alternated between light duty and paid sick leave until
April 2002, when she went out permanently on paid sick leave.
(Def.'s Rule 56.1 St. ¶ 3; Pl.'s Resp. Rule 56.1 St. ¶ 1.)  On
May 20, 2003, one year after the plaintiff went out on paid sick
leave, the plaintiff submitted a treating physician's report
from Dr. Jeffrey Spivak, which indicated that the plaintiff
should continue her sick leave.  (Def.'s Rule 56.1 St. ¶ 6;
Treating Physician's Summary Report dated May 20, 2003, attached
as Ex. C to the Declaration of Jonathan Bardavid dated Feb. 15,
2007 ("Bardavid Decl.").)  The plaintiff remained on paid sick
leave until July 25, 2003, when she was medically separated from
the DOC pursuant to New York Civil Service Law § 71.[2]  (Def.'s

---

[1]  The defendant's Statement Pursuant to Local Rule 56.1 includes relevant
citations to the evidence supporting each of the factual allegations.  The
plaintiff's response generally denies the defendant's entire Rule 56.1
Statement but does not explain why the statements in it are false or
contested and cites no evidence to support a denial.  (Pl.'s Resp. Rule
56.1 St. ¶¶ 1-2.)  Unsubstantiated denials are insufficient to raise
contested issues of fact or to support the denial of a motion for summary
judgment.  See Indus. Bank of Japan Trust Co. v. Haseotes, 92 Civ. 6074,
1993 WL 322775, at *6 n.1 (S.D.N.Y. Aug. 19, 1993); Logan v. St. Luke's-
Roosevelt Hosp. Ctr., 636 F. Supp. 226, 232 (S.D.N.Y. 1986).

[2]  New York Civil Service Law § 71 provides in pertinent part:

    Where an employee has been separated from the service by reason
    of a disability resulting from occupational injury . . . he or

Rule 56.1 St. ¶ 4; Pl.'s Resp. Rule 56.1 St. ¶ 1.)  More than one month prior to her medical separation, the defendant notified the plaintiff that she could contest the separation by submitting medical documentation indicating her ability to perform all of the functions of a Correction Officer.  (Def.'s Rule 56.1 St. ¶¶ 12-13; Letter from DOC Assistant Commissioner Robert M. O'Leary dated May 20, 2003, attached as Ex. E to Bardavid Decl.)  The plaintiff did not submit any such documentation.  (Def.'s Rule 56.1 St. ¶ 15; Dep. Tr. 90, 93, 95.)

In March 2003, while the plaintiff was out on paid sick leave, the plaintiff applied for an accident disability pension from the New York City Employees' Retirement System ("NYCERS"). (Def.'s Rule 56.1 St. ¶ 8; Dep. Tr. 87.)  In support of her application, the plaintiff stated that she could not perform the functions of a Correction Officer.  (Def.'s Rule 56.1 St. ¶ 9; Dep. Tr. 88.)  On July 25, 2003, NYCERS found the plaintiff disabled but denied the accident disability application because the plaintiff's on-duty injury was not an accident within the meaning of the NYCERS rules.  (Def.'s Rule 56.1 St. ¶¶ 10-11;

she shall be entitled to a leave of absence for at least one year . . . .  Such employee may, within one year after the termination of such disability, make application . . . for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission.  If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his or her former position, he or she shall be reinstated to his or her former position . . . .

Letter from I.J. Stephen, Deputy Director of NYCERS, dated July 25, 2003, attached as Ex. D to Bardavid Decl.)

On October 21, 2003 the plaintiff filed a charge of discrimination with the EEOC alleging that her medical separation from the DOC violated the ADA and was in retaliation for a prior complaint, and that she was not offered a reasonable accommodation to return to work.  (Def.'s Rule 56.1 St. ¶¶ 40-41; Pl.'s Letter to the EEOC dated October 21, 2003, attached as Ex. M to Bardavid Decl.)  The EEOC subsequently found no evidence from which to infer that the defendant had discriminated against the plaintiff based on sex, age, race, or disability, or had retaliated against the plaintiff for engaging in a protected activity; the EEOC also found that the plaintiff did not request a reasonable accommodation and therefore the employer could not have denied such an accommodation.  (Def.'s Rule 56.1 St. ¶ 43; Letter from EEOC to Pl. dated Oct. 21, 2004, attached as Ex. N to Bardavid Decl.)

In August 2003, during the time that the plaintiff was medically separated from employment from the DOC, she obtained full-time employment as an interviewer for Michael Vincent Michael Corporation ("MVM").  (Def.'s Rule 56.1 St. ¶ 31; Dep. Tr. 14.)

In or about August 2003, the plaintiff applied for reinstatement pursuant to New York Civil Service Law § 71.

(Def.'s Rule 56.1 St. ¶¶ 17-18; Pl.'s Resp. Rule 56.1 St. ¶ 1.)
On February 9, 2004 a doctor from the New York City Department
of Citywide Administrative Services ("DCAS") evaluated the
plaintiff and determined that she was medically fit to return to
her former position as a Correction Officer.  (Def.'s Rule 56.1
St. ¶¶ 19-20; Letter from Dr. Joseph A. De Marco dated February
9, 2004, attached as Ex. G to Bardavid Decl.)  On March 15, 2004
the plaintiff was reinstated to her position as a Correction
Officer with the DOC and assigned to rotating shifts at the Eric
M. Taylor Center.  (Def's. Rule 56.1 St. ¶ 21; Pl.'s Resp. Rule
56.1 St. ¶ 1.)  On March 20, 2004 the plaintiff submitted a
request to the Warden of the Eric M. Taylor Center for a steady
5:00 a.m. to 1:31 p.m. tour or a 6 a.m. to 2:30 p.m. tour.
(Def.'s Rule 56.1 St. ¶ 23; Mem. from Pl. to Warden Squillante
dated March 20, 2004, attached as Ex. I to Bardavid Decl.)  The
plaintiff explained:  "The reason for this request is that I
must maintain a strict exercise program and routine to keep my
health at its top performance due to the past surgeries" as the
reason for the request.  (Id.)  The request was denied "at this
time."  (Id.)

    Despite her reinstatement, the plaintiff remained employed
with MVM full-time.  (Def.'s Rule 56.1 St. ¶ 34; Pl's Resp. Rule
56.1 St. ¶ 1; Dep. Tr. 16-17.)  DOC Directive # 2250R requires
that a DOC employee seek and receive departmental approval

before commencing off-duty employment and that any approved off-duty employment not exceed twenty hours per week.  (Def.'s Rule 56.1 St. ¶ 33; Pl's Resp. Rule 56.1 St. ¶ 1; DOC Directive # 2250R, attached as Ex. K to Bardavid Decl.)  On August 22, 2006 the plaintiff agreed to retire, effective January 31, 2007, to avoid being disciplined for unauthorized off-duty employment. (Def.'s Rule 56.1 St. ¶¶ 38-39; Pl's Resp. Rule 56.1 St. ¶ 1; Dep. Tr. 31-32.)

On March 27, 1991 the plaintiff entered into a stipulation of settlement in the case entitled Aversa v. City of New York, 90 Civ. 0138 (PKL).[3]  The stipulation provides in pertinent part: "[t]he DOC agrees that any personnel action or discipline contemplated with respect to plaintiff shall first be approved by the Deputy Commissioner for Human Resources or, if he is not available, the Commissioner of the DOC."  (Stipulation and Order of Settlement and Discontinuance in Aversa v. City of New York dated March 27, 1991, attached as Ex. P to Bardavid Decl., at ¶ 6)  The plaintiff's medical termination from employment was signed by the Assistant Commissioner for Personnel, not the Deputy Commissioner for Human Resources or the Commissioner of

---

[3]  The plaintiff was a class member in Aversa v. City of New York, 90 Civ. 0138 (PKL), in which she and twenty of her co-workers, through their union, filed suit against the DOC for wrongful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, alleging discriminatory treatment of pregnant employees.  The plaintiff settled with the DOC for $55,000, and the DOC admitted no liability. (See Dep. Tr. 50-52; Ex. P to Bardavid Decl., at ¶¶ 3, 12.)

the DOC.  (See Ex. F to Bardavid Decl.)  At the time the
plaintiff's medical termination was signed the position of
Deputy Commissioner for Human Resources no longer existed and
had been subsumed by the Assistant Commissioner for Personnel.
(Dep. Tr. 133-34.)


## II.

    The standard for granting summary judgment is well
established.  Summary judgment may not be granted unless "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs.
Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial
court's task at the summary judgment motion stage of the
litigation is carefully limited to discerning whether there are
any genuine issues of material fact to be tried, not to deciding
them.  Its duty, in short, is confined at this point to issue-
finding; it does not extend to issue-resolution." Gallo, 22
F.3d at 1224.  The moving party bears the initial burden of
informing the district court of the basis for its motion and
identifying those portions of the record which it believes

demonstrates the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323.  The substantive law governing the
case will identify those facts that are material, and "only
disputes over facts that might affect the outcome of the suit
under the governing law will properly preclude the entry of
summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).

        In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)); Gallo, 22 F.3d at 1223.  Summary judgment is improper
if there is any evidence in the record from any source from
which a reasonable inference could be drawn in favor of the
nonmoving party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43
F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its
initial burden of showing a lack of a material issue of fact,
the burden shifts to the nonmoving party to come forward with
"specific facts showing that there is a genuine issue for
trial."  Fed. R. Civ. P. 56(e).  The nonmoving party must
produce evidence in the record and "may not rely simply on
conclusory statements or on contentions that the affidavits
supporting the motion are not credible."  Ying Jing Gan v. City

9

of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto

v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

An employment discrimination claim brought pursuant to the

ADA is governed at the summary judgment stage by the burden-

shifting analysis established in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973).  See Heyman v. Queens Vill. Comm.

for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,

198 F.3d 68, 72 (2d Cir. 1999) (applying McDonnell Douglas test

to ADA claim).  Under the McDonnell Douglas test, the plaintiff

carries the initial burden of establishing a prima facie case of

discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133, 142 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S.

502, 506 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450

U.S. 248, 252 (1981) (citing McDonnell Douglas); Fisher v.

Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997).[4]

When a plaintiff has successfully demonstrated the elements

of a prima facie case, the burden of production shifts to the

defendant to put forth a legitimate, nondiscriminatory reason

for the employer's challenged action.  See Burdine, 450 U.S. at

252-53.  After the defendant articulates a legitimate reason for

---

[4]  In general, disability claims under the NYHRL and NYCHRL are subject to
the same analytical framework as claims under the ADA.  Parker v. Columbia
Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir. 2000) (NYHRL); Mohamed v.
Marriott Int'l Inc., 905 F.Supp. 141, 156-57 (S.D.N.Y. 1995) (NYHRL and
NYCHRL).  The sole exception appears to be the more expansive definition
of "disability" in the NYHRL and NYCHRL.  See, e.g., Giordano v. City of
New York, 274 F.3d 740, 754 (2d Cir. 2001) (noting the discrete, and more
expansive, definitions of "disability" under the NYHRL and NYCHRL).

the action, the presumption of discrimination raised by the
prima facie case drops out, and the plaintiff has the
opportunity to demonstrate that the proffered reason was not the
true reason for the employment decision and that the plaintiff's
membership in a protected class was.  Id. at 254-56; Fisher, 114
F.3d at 1336.  "The ultimate burden of persuading the trier of
fact that the defendant intentionally discriminated against the
plaintiff remains at all times with the plaintiff."  Burdine,
450 U.S. at 253; see also Reeves, 530 U.S. at 143; Fisher, 114
F.3d at 1336.  The Court of Appeals for the Second Circuit has
instructed that in determining whether the plaintiff has met
this burden, a court is to use a "case by case" approach that
evaluates "the strength of the plaintiff's prima facie case, the
probative value of the proof that the employer's explanation is
false, and any other evidence that supports [or undermines] the
employer's case."  James v. N.Y. Racing Ass'n, 233 F.3d 149, 156
(2d Cir. 2000) (quoting Reeves, 530 U.S. at 148-49).  Although
summary judgment must be granted with caution in employment
discrimination actions "where intent is genuinely in
issue, . . . summary judgment remains available to reject
discrimination claims in cases lacking genuine issues of
material fact."  Chambers, 43 F.3d at 40; Slatky v. Healthfirst,
Inc., 02 Civ. 5182, 2003 WL 22705123, at *4 (S.D.N.Y. Nov. 17,
2003).

## III.

The defendant contends that the plaintiff has failed to make out a prima facie case for discrimination because at the time of the plaintiff's termination in July 2003 she could not perform the essential functions of her job.  To make out a prima facie case of discrimination based on a disability, the plaintiff must establish that (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without a reasonable accommodation; and (4) she was discriminated against because of her disability.  Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998); see 42 U.S.C. § 12112(a); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998); Seiderbaum v. City of New York, 309 F. Supp. 2d 618, 623 (S.D.N.Y. 2004);  Hawana v. City of New York, 230 F. Supp. 2d 518, 530-31 (S.D.N.Y. 2002); Usala v. Consol. Edison Co., 141 F. Supp. 2d 373, 380 (S.D.N.Y. 2001).

The DOC argues that the plaintiff is not a qualified individual with a disability because she could not perform the essential functions of her job at the time of her discharge in July 2003.  A "qualified individual with a disability" is a person with a disability "who, with or without reasonable

accommodation, can perform the essential functions of the
employment position that such individual holds or desires." 42
U.S.C. § 12111(8).  EEOC regulations define "essential
functions" as the "'fundamental' duties to be performed in the
position in question, but not functions that are merely
'marginal.'"  Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d
Cir. 1997) (quoting 29 C.F.R. § 1630.2(n)(1)).  The NYCHRL
standard is similar.  It states that "it shall be an affirmative
defense that the person aggrieved by the alleged discriminatory
practice could not, with reasonable accommodation, satisfy the
essential requisites of the job . . . ."  N.Y. City Admin. Code
§ 8-107(15)(b).  The NYHRL limits disability to those
impairments which "upon the provision of reasonable
accommodations, do not prevent the complainant from performing
in a reasonable manner the activities involved in the job or
occupation sought or held."  N.Y. Exec. Law § 292(21).

     The plaintiff has failed to make a prima facie showing that
she could perform the essential functions of her job when she
was terminated in July 2003.  For over a year prior to her
medical separation, the plaintiff was out on paid sick leave and
was unable to report for work.  (Dep. Tr. 81.)  The plaintiff
notes in her complaint that her inability to report to work
began in April 2002 due to complications from a back injury.
(Compl. ¶ 9.)  She testified that she felt she could not

function at the level the DOC required.  (Dep. Tr. 88.)  In May 2003, the plaintiff's physician stated that the plaintiff could not return to work in any capacity, full or light, and should remain out sick.  (Treating Physician's Summary Report dated May 12, 2003, attached as Ex. C to Bardavid Decl.)  New York Civil Service Law allows an employee a one-year leave of absence following an occupational injury that leads to disability.  See N.Y. Civ. Serv. Law § 71.  On May 20, 2003, over a year after the plaintiff went out on paid sick leave, the defendant informed the plaintiff that she was being medically separated, but had one month to submit papers to contest this determination.  (Ex. E to Bardavid Decl.)  The plaintiff points to no such submissions.  (Dep. Tr. 95.)  Further, the plaintiff admits that when she applied for an accident disability pension from NYCERS in March 2003 she was unable to perform the essential functions of her job.  (Dep. Tr. 88.)  The plaintiff has made it plain that at the time of her medical separation, she was unable to perform the essential requirements of her job. The plaintiff contends only that she was wrongfully terminated, but provides no evidence that she was qualified to meet the requirements of her job at the time she was separated.  Thus, because the plaintiff was unable to perform the essential functions of her job, she cannot make out a prima facie case for discrimination under the ADA, NYHRL, or NYCHRL.

14

Moreover, the defendant argues that it is also entitled to summary judgment because it articulated a legitimate non-discriminatory reason for terminating the plaintiff and the plaintiff has failed to present any evidence that the non-discriminatory reason was pretextual.  New York Civil Service Law § 71 provides an employee up to one year of leave due to a work-related injury.  After one year, the agency, in this case the DOC, is permitted to separate an employee from employment for medical reasons.  See N.Y. Civ. Serv. Law § 71.  Here, it is undisputed that the plaintiff went out on paid sick leave in April 2002 due to a work-related injury.  On May 20, 2003 the plaintiff was informed, in writing, that the DOC was seeking to separate her medically from employment pursuant to New York Civil Service Law § 71.  (Ex. E to Bardavid Decl.)  The plaintiff was further notified that she had until June 20, 2003 to submit medical documentation indicating her ability to perform the full duty functions of a Correction Officer, and that if she submitted such documentation, the DOC would schedule a medical examination to determine if she was capable of resuming her position with the DOC in a full duty capacity. (Id.)  The plaintiff concedes that she received the notice and she points to no documentation that she submitted in response to the notification.  (Dep. Tr. 90, 92-93, 95.)

15

Given that the plaintiff was out on sick leave for one year and that the plaintiff failed to contest her medical separation within the time provided, and that the defendant's actions were in accordance with New York Civil Service Law § 71, the defendant has presented a non-discriminatory reason for the plaintiff's termination.  See Hatter v. Fulton, 92 Civ. 6065, 1997 WL 411623, at *7 (S.D.N.Y. July 21, 1997), aff'd sub nom. Hatter v. New York City Housing Authority, 165 F.3d 14 (2d Cir. 1998) (finding termination pursuant to N.Y. Civ. Serv. Law § 71 to be a valid non-discriminatory reason for termination because the plaintiff had not attended work in over a year and had failed to provide any documentation that she was able to return to work).  No presumption of discrimination arises when an employer makes a decision explicitly provided for by the Civil Service Law.  See Syken v. New York, 02 Civ. 4673, 2006 WL 3771095, at *9 (S.D.N.Y. Dec. 21, 2006).

Under the burden-shifting framework of McDonnell Douglas, the burden shifts back to the plaintiff to show that the DOC's proffered reason for termination is pretextual.  411 U.S. at 802-05; Fisher, 114 F.3d at 1336.  The plaintiff has not responded to the defendant's argument or presented any evidence that the defendant's proffered reason was pretextual.  Thus, for this reason also the defendant is entitled to summary judgment.

The defendant's motion for summary judgment dismissing the plaintiff's claims of discrimination under the ADA, NYHRL, and NYCHRL based on her medical separation in July 2003 is **granted**.

**IV.**

In response to the plaintiff's claim of failure to make a reasonable accommodation when she returned to work in March 2004, the defendant argues that the plaintiff's claim is barred because the plaintiff failed to include the claim in her charge of discrimination filed with the EEOC.

The Court has jurisdiction only over those claims included in an EEOC charge or those based on conduct subsequent to an EEOC charge which are "reasonably related" to those alleged in the EEOC charge. Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998); see Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001); Katz v. Beth Israel Med. Ctr., 95 Civ. 7183, 2001 WL 11064, at *6-7 (S.D.N.Y. Jan. 4, 2001).  Exhaustion of administrative remedies through the EEOC is a precondition for bringing these claims in federal court.  See Legnani, 274 F.3d at 686; Butts, 990 F.2d at 1401. A claim raised for the first time in the district court is "reasonably related" to allegations in an EEOC charge "where the

conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Butts, 990 F.2d at 1402 (internal quotation marks and citation omitted).  In this inquiry, the focus should be "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and citation omitted).  The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." Id. at 202.  This "is essentially an allowance of loose pleading" and is based on the recognition that "EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering." Butts, 990 F.2d at 1402.

The Court of Appeals for the Second Circuit has also recognized that two other types of claims are "reasonably related" to a complaint before the EEOC: complaints alleging retaliation by an employer against an employee for filing an EEOC charge, and complaints alleging further incidents of discrimination carried out in precisely the same manner or using the same method alleged in the EEOC charge. Id. at 1402-03.

18

The defendant alleges that the plaintiff failed to exhaust her remedies before the EEOC and that none of the exceptions to the exhaustion rule apply in this case.  The defendant urges that the Court therefore lacks jurisdiction to hear the plaintiff's claim that the defendant's failure to grant her requested shift change in March 2004 was a failure to provide her a reasonable accommodation for her alleged disability.

The plaintiff simply ignored this argument and has not explained how the charge of failure to accommodate was presented to the EEOC or is reasonably related to the EEOC charge under one of the Butts exceptions.  An examination of the EEOC charge and the current complaint of failure to accommodate indicates that they are not reasonably related.

The plaintiff filed a charge of discrimination with the EEOC on October 21, 2003, in which she claimed that that the DOC failed to offer her a return to work with a reasonable accommodation and instead wrongfully terminated her in July 2003.  (See Ex. M to Bardavid Decl.)  The plaintiff did not claim that she sought a reasonable accommodation at that time, but she did note that the DOC had positions where officers could work with a disability.  (Id.)  The EEOC decision concluded that because the plaintiff did not ask for an accommodation, she could not have been denied one, and thus found this claim unavailing.  (Ex. N to Bardavid Decl., at 2.)

The failure to accommodate claim that the plaintiff currently brings relates to her request for a shift change in March 2004, after she had been reinstated to full duty at the DOC, not to any behavior by the DOC before the plaintiff's medical separation.  It is a different charge of discrimination which would not have reasonably been investigated by the EEOC in its initial investigation.  Furthermore, it is not an instance of alleged discrimination which could be considered to have been carried out in precisely the same manner as the alleged earlier failure to accommodate.  The claim included in the EEOC charge refers to a failure to offer the plaintiff a different position at the EEOC to accommodate her disability between April 2002 and July 2003 when she was on medical leave, whereas the current claim is based on the denial of a request for a shift change made by the plaintiff several months after she was reinstated to her previous position as a Corrections Officer in March 2004. Therefore, the plaintiff's ADA claim for failure to accommodate is barred.[5]

---

[5]   Unlike the ADA, the NYHRL and NYCHRL do not require exhaustion of administrative remedies.  These acts provide an election of forums, either administrative or judicial, such that a plaintiff who files a complaint with the State Human Rights Division or the City Human Rights Commission may not then bring suit in court.  See N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(a); Hernandez v. N.Y. City Law Dept. Corp. Counsel, 94 Civ. 9042, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997).  Because the plaintiff did not file her failure to accommodate claim with either the State or City administrative agency, she can pursue that claim under the State and City statutes in this Court.  See Id. at * 11.

In any event, the claim under the ADA, as well as under the NYHRL and the NYCHRL, fails on its merits.  To state a claim for discrimination based on a failure to accommodate, the plaintiff must allege that:  (1) she is an individual with a disability; (2) an employer covered by the statute had notice of this disability; (3) with reasonable accommodation, she could perform the essential functions of the position; and (4) the employer had refused to make such accommodations.  Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004); Kendricks v. Westhab, Inc., 163 F. Supp. 2d 263, 269 (S.D.N.Y. 2001).

The defendant argues that the plaintiff was not disabled under the meaning of the applicable statutes at the time she made her request for a shift change.  The term "disability" is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  The EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).  The regulations define "substantially limit[ed]" as "[u]nable to perform a major life activity that the average person in the general population

21

can perform" or "[s]ignificantly restricted as to the condition,
manner or duration under which an individual can perform a
particular major life activity as compared to the condition,
manner, or duration under which the average person in the
general population can perform the same major life activity."
Id. § 1630.2(j)(1).  "Disability" is defined more broadly under
the NYHRL and NYCHRL.  The NYHRL defines "disability" as "(a) a
physical, mental or medical impairment resulting from
anatomical, physiological, genetic or neurological conditions
which prevents the exercise of a normal bodily function or is
demonstrable by medically accepted clinical or laboratory
diagnostic techniques or (b) a record of such an impairment or
(c) a condition regarded by others as such an impairment...."
N.Y. Exec. Law § 292.21.  The NYCHRL defines "disability" as
"any physical, medical, mental or psychological impairment, or a
history or record of such impairment," which includes "an
impairment of any system of the body." N.Y.C. Admin. Code § 8-
102(16).  Neither the NYHRL nor the NYCHRL requires proof of an
impairment that substantially limits a major life activity.

     The plaintiff has not shown that she had a substantial
limitation of a major life activity, and therefore she has not
presented evidence that she was disabled under the meaning of
the ADA.  The plaintiff testified that she can walk up to three
miles a day, can sit for over an hour, and does not require

assistance getting dressed.  (See Dep. Tr. 109-10.)  In August 2003 the plaintiff applied for reinstatement to the DOC pursuant to New York Civil Service Law § 71 and alleged that she was able to perform the full duties of a Correction Officer.  The plaintiff underwent a medical examination on or about December 15, 2003, at which time she was diagnosed as medically fit to perform the duties of her position as a Correction Officer. (See Letter from DCAS dated February 9, 2004, attached as Ex. G to Bardavid Decl.)  The plaintiff then returned to full duty. An employee is only eligible for reinstatement pursuant to New York Civil Service Law § 71 if a medical officer certifies that the person is physically and mentally fit to perform the duties of the person's prior position.  See N.Y. Civ. Serv. Law § 71. Therefore, the plaintiff has failed to present evidence that she was disabled under the meaning of the ADA at the time of her request for a reasonable accommodation.

However, there are issues of material fact as to whether the plaintiff was disabled under the NYHRL's and the NYCHRL's broader definition of disability.  The plaintiff testified that she suffered from physical impairments resulting from anatomical and physiological conditions that are demonstrable by medically accepted techniques.  The plaintiff testified that she has had a spinal disc replaced with an implant which limits her ability to stand and sit for long periods of time.  (Dep. Tr. 108-10.)  She

also stated that she has difficulty dressing in the morning, and cannot bend down to pick up objects off the floor.  (Id. at 110.)  The plaintiff also has a limited range of motion in her left shoulder and elbow and is unable to pick up heavy objects due to an earlier injury.  (Id. at 109.)  There are thus issues of material fact as to whether the plaintiff was disabled under the NYHRL or the NYCHRL.

The failure to accommodate claim fails in any event, however, because the DOC did not refuse to make a reasonable accommodation for a disability for which it had notice.  The initial burden of requesting an accommodation is "on the employee, and it is only after such a request has been made that the employer must engage in the 'interactive process' of finding a suitable accommodation."  Felix v. N.Y. City Transit Auth., 154 F. Supp. 2d 640, 656-57 (S.D.N.Y. 2001) (citing Stola v. Joint Indus. Bd., 889 F. Supp. 133, 135 (S.D.N.Y. 1995) (An "employer is obliged to accommodate only those disabilities that are obvious or called to its attention by the employee.")).  Proper notice is important because the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  Felix, 154 F. Supp. 2d at 658 (internal citations omitted).  An employer "who acts or fails to

act without knowledge of a disability cannot be said to have discriminated based on that disability." Id. at 657.

At the time the plaintiff made the request for a tour change she was on full duty status and did not indicate that she was disabled in any way. The plaintiff cited "maintain[ing] a strict exercise program and routine to keep [her] health at its top performance due to the past surgeries" as the reason for her request. (Ex. I to Bardavid Decl.) The plaintiff did not refer to this request as an accommodation for a disability. Moreover, she had just been reinstated to the DOC pursuant to N.Y. Civil Service Law § 71, which permits reinstatement when a previously disabling condition has ended. As such, the DOC had no reason to believe that the plaintiff was then disabled. See N.Y. Civ. Serv. Law § 71.

Moreover, the plaintiff did not follow the DOC's formal procedure for requesting a disability accommodation. DOC Directive # 2232R requires that all applicants complete a Reasonable Accommodation Request Form and submit reasonable supporting documentation to the Disability Rights Coordinator. (See DOC Directive # 2232R(V)(I)(a), attached as Ex. J to Bardavid Decl.) The plaintiff conceded that she followed none of these protocols, but instead submitted a brief typed memorandum without any supporting papers to the Personnel Department, addressed to her Warden. (See Dep. Tr. 119, 122-23;

Ex. I to Bardavid Decl.)  The plaintiff's request appeared to be
nothing more than a request to accommodate a personal
preference.   Without more definite notice from the plaintiff,
namely, some indication of a disability and how the disability
relates to the request for an accommodation, the defendant was
unable to participate in the interactive process that the ADA
envisions.  Therefore, the plaintiff never notified the DOC
properly of the plaintiff's request for a reasonable
accommodation for an alleged disability.

        Finally, the plaintiff's request for an accommodation was
not reasonably related to any disability; there is no nexus or
causal connection between the plaintiff's requested
accommodation and any alleged disability such that the change in
job condition could be considered as reasonably related to her
alleged disability.  See Pimentel v. City of New York, 2001 WL
1579553, at *15 (S.D.N.Y. Dec. 11, 2001); Felix, 154 F. Supp. 2d
at 659.  The plaintiff testified that her request for a tour
change was to enable her to maintain a "strict exercise program
. . . to keep my health at its top performance due to past
surgeries" by working out on a treadmill at her home.  (See Ex.
I to Bardavid Decl.; Dep. Tr. 123-24, 130.)  The plaintiff
further testified that on average it took her three hours to get
home from the DOC, leaving little time to exercise, whereas her
proposed shift change would result in reduced travel time,

better facilitating her exercise regime.  (Dep. Tr. 124, 130.)

However, there is no connection between reduced commuting time

and the plaintiff's ability to work out.  The plaintiff admitted

that there was a gym at the DOC that she could use before or

after her shifts, and the hour she gets off work is immaterial

to her ability to work out.  (Dep. Tr. 129.)  Furthermore, the

defendant contends that the request for a tour change was in

fact to accommodate the work schedule for the plaintiff's second

job, as an interviewer for MVM.  The plaintiff does not respond

to this contention.  Thus, her shift change request appears to

be no more than a personal preference for getting home at one

time as opposed to another, possibly to accommodate a second

job, and the ADA imposes no obligation on employers to

accommodate personal preferences.  Pimentel, 2001 WL 1579553 at

*15 (rejecting failure to accommodate claim that requested a

transfer to reduce commuting time).  The plaintiff similarly

does not show why the change in tour is a reasonable

accommodation for her alleged disability, her back pain; she

simply asked for the same hours at a different time of day.

This is not a sufficient causal connection.

    Because the plaintiff's claim for a shift change was not a

reasonable accommodation claim, was not filed with the EEOC or

reasonably related to the claim that was filed, and because

there is no evidence from which a reasonable jury could conclude

that the plaintiff provided the DOC with adequate notice of her request, or that she made a request that was causally connected to her alleged disability, the defendant's motion for summary judgment on this claim is **granted**.

**V.**

Finally, the plaintiff alleges that the defendant violated a stipulation of settlement dated March 27, 1991 in the case of Aversa v. City of New York, 90 Civ. 0138 (PKL). The stipulation provides in pertinent part: "[t]he DOC agrees that any personnel action or discipline contemplated with respect to plaintiff shall first be approved by the Deputy Commissioner for Human Resources, or, if he is not available, the Commissioner of the DOC." (Ex. P to Bardavid Decl., at ¶ 6)  The plaintiff alleges that because her medical termination from employment was signed by the Assistant Commissioner for Personnel instead of the Deputy Commissioner of Human Resources or the Commissioner of the DOC, the terms of her settlement agreement were violated. However, the position of Deputy Commissioner for Human Resources was eliminated by the DOC and had been subsumed by the Assistant Commissioner for Personnel at the time the plaintiff's medical termination was signed. (Reply Mem., at 9-10; Dep. Tr. 133-34.) The plaintiff testified that she was aware of this. (Dep. Tr. 133-34.)

In any event, stipulations of settlement are contracts and therefore are governed by general principles of contract law. See Red Ball Interior Demolition Corp. V. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999).  A claim for breach of contract requires a material breach.  In re Stock Exch. Options Trading Antitrust Litig., 2005 WL 1635158, 99 Civ. 0962, at *14 (S.D.N.Y. July 8, 2005) (citing 41-41 51st Street Realty Assocs v. Tura Assocs., 616 N.Y.S.2d 73, 75 (App. Div. 1994). Materiality "goes to the essence of the contract. . . .  [A] breach is material if it defeats the object of the parties in making the contract and 'deprive[s] the injured party of the benefit that it justifiably expected.'"  ESPN, Inc. v. Office of the Commissioner of Baseball, 76 F. Supp. 2d 416, 421 (S.D.N.Y. 1999) (quoting E. Allen Farnsworth, Farnsworth on Contracts § 8.16 (3d ed. 1999).  When one party has committed a material breach, the non-breaching party may either elect to terminate the contract and sue for damages, or continue performance under the contract and sue for partial damages.  City of New York v. N.Y. Pizzeria Delicatessen, Inc., 05 Civ. 2754, 2006 WL 2850237, at *7 (S.D.N.Y. Sept. 29, 2006).  Here, the plaintiff has chosen the latter.[6]

---

[6]  The parties have not disputed that these basic principles of contract law should be applied to the stipulation.

The plaintiff has failed to offer any evidence of a
material breach of the settlement agreement.  The essence or
object of the settlement with the plaintiff was to release the
DOC and its employees from any liability arising from the
allegations in the complaint in exchange for a payment of
$55,000 and the implementation of a Pregnancy Disability Policy.
(See Ex. P to Bardavid Decl., at ¶¶ 1-3, 8.)  The plaintiff
testified that she received the money and released the DOC from
liability.  (Dep. Tr. 52.)  The Pregnancy Disability Policy was
included in the stipulation of settlement.  (See Classification
# 2262, attached to Ex. P to Bardavid Decl.)  The plaintiff
acknowledged that the terms of her employment remained subject
to the rules and regulations of the DOC, including disciplinary
procedures.  (See Ex. P to Bardavid Decl., at ¶ 5.)  While the
stipulation provided that a personnel action with respect to the
plaintiff was to be approved by the Deputy Commissioner of Human
Resources or, if he is not available, by the DOC Commissioner,
when the personnel action with respect to the plaintiff was
approved by a senior official of the DOC who assumed the duties
of the Deputy Commissioner of Human Resources, that approval
process could not be construed as a material breach of the
stipulation, one that defeated the object of the parties.
Therefore, the plaintiff retained the benefit of her bargain,

and there was no material breach of the stipulation of settlement.

Because the plaintiff provides no evidence from which a reasonable jury could conclude that the stipulation of settlement in Aversa was violated, the defendant's motion for summary judgment as to this claim is **granted**.[7]

### CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **granted**.  The Clerk is directed to enter judgment dismissing the complaint and closing this case.


SO ORDERED.

Dated:     New York, New York
           September 21, 2007

                                    John G. Koeltl
                               United States District Judge

---

[7]  There is a substantial question whether the Stipulation in the Aversa action can form the basis for an independent claim in this case.  The Stipulation specifically provided: "This stipulation shall not be admissible in nor is it related to any other litigation or settlement negotiations."  (Ex. P to Bardavid Decl., at ¶ 12.)  Neither of the parties has raised this issue.  However, the dismissal of the claim in this case is without prejudice to any motions the parties may make in the Aversa action.

31